Estate of Herbert L. Johnston, Deceased, Edward S. Johnston and Adeline S. Johnston, Executors v. Commissioner.
Estate of Johnston v. Commissioner
Docket No. 110075.
United States Tax Court
1943 Tax Ct. Memo LEXIS 239; 2 T.C.M. (CCH) 299; T.C.M. (RIA) 43296; June 22, 1943
*239 Held, transfers to two certain trusts were not made in contemplation of death or to take effect in possession or enjoyment at or after death. The fair market value of Class A common stock of The Hobart Manufacturing Company on January 21, 1938, was $36 per share. Johnson West, Esq., Troy, O., and Robert S. Miller, Esq., for the petitioners. John H. Pigg, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in estate tax in the amount of $129,610.05. Two issues are raised by the pleadings. (1) The determination that certain property transferred by the decedent to two irrevocable trusts constituted part of the taxable estate; and (2) the fair market value as of the date of decedent's death of Class A common stock of The Hobart Manufacturing Company. Certain facts were stipulated and other facts were developed orally and by exhibits at the hearing. Findings of Fact Decedent, who was born March 11, 1869, was the moving spirit in the organization of The Hobart Manufacturing Company. Of the five original incorporators, including decedent, one was Dr. J. Ambrose Johnston, of Cincinnati; another, Edward Samuel Johnston, *240 also of Cincinnati, both of whom were older brothers of decedent, and both of whom survived him. From the date of organization of the company in 1897, decedent had been continuously a member of its board of directors and, in addition to having been throughout its history, its chief engineer, had continuously occupied one or another executive office. His beginning salary was $780 per year; his salary for the year 1937 was $15,000. As of March 20, 1929, decedent was elected president of the company, which office he held until his death. On December 15, 1928 decedent executed an irrevocable trust for the benefit of his wife during her life and after her death for the benefit of decedent's daughter and son and their descendants. The concluding paragraph of the trust agreement was as follows: I reserve the right from time to time during. my life, by an instrument in writing delivered to the Trustee, to modify and alter any of the administrative provisions of this agreement. I also reserve the right for myself, or any other person, to increase this trust by delivering property or making additional policies payable to the Trustee for that purpose, but the duties and liabilities of the *241 Trustee shall not be substantially increased without its written consent, and I shall not have the power to revoke the trust hereby created or to change any of the beneficial interests herein. As of December 29, 1928, the decedent executed a second trust for the benefit of himself, his wife, son, daughter, and brother, the trust to continue during the lives of those named and for 21 years thereafter. This trust was revocable and was amended from time to time and rewritten as of June 19, 1936, so as to be for the primary benefit of decedent and his wife. The latter change in the trust was made with the written consent of the beneficiaries. As of January 1935, when he was 65 years of age, decedent, under the right reserved to him by the terms of the December 15, 1928 trust, to increase the trust transferred thereto additional securities. As of December 1935, when he was 66 years of age, decedent, among other securities, had theretofore transferred to the corpus of the trust dated December 28, 1928, 16,994 of the Class A shares of The Hobart Manufacturing Company. On December 27, 1935, the decedent executed a second irrevocable trust, it being for the benefit of his wife, son, daughter, *242 son's wife, and the settlor's grandchildren. Also, in December 1935 decedent, with the written consent of all the beneficiaries named therein, withdrew from the corpus of the December 29, 1928 trust 9,050 of the 16,994 Class A shares and added the same, together with other securities, to the corpus of the December 27, 1935 trust. The decedent filed a gift tax return for the year 1935 in which there was reported for gift tax purposes of the securities that were added in January 1935 to the corpus of the trust dated December 15, 1928, and the securities transferred as of December 27, 1935 to the December 27, 1935 trust. The gift tax return disclosed a gift tax liability of $32,389.34, which amount was paid on March 18, 1936. Thereafter, as of July 6, 1937, a deficiency in gift tax of $146.57, plus interest, for the year 1935 was determined by the Commissioner to be due from the decedent, which deficiency of $146.57, plus interest, was paid on August 28, 1937. On December 11, 1936 decedent executed his last will and testament by, the terms of which he bequeathed his property to his wife, son, and daughter. The value of the securities transferred in December 1928 to the corpus of *243 the December 15, 1928 trust, was not returned for Federal estate tax purposes, as part of decedent's gross estate. The securities remaining in the trust dated December 29, 1928 were returned, as part of decedent's gross estate, for Federal estate tax, at a value of $298,764.76. The value of the securities transferred in January 1935 to the corpus of the December 15, 1928 trust was not returned as part of decedent's gross estate, for Federal estate tax. The value of the securities transferred to the December 27, 1935 trust was not returned, as part of decedent's gross estate, for Federal estate tax. During the year 1926 there was a reorganization of the capital structure of The Hobart Manufacturing Company, upon the completion of which 200,000 shares of its then authorized and issued common stock were listed on the Cincinnati Stock Exchange. During the year 1934, and as of July 1 of that year, there was a further reorganization of the capital structure of The Hobart Manufacturing Company. In connection with this reorganization the outstanding 200,000 shares of common stock were converted into a like number of Class A stock, and were issued share for share to the former holders of *244 the 200,000 shares of common stock. The 200,000 shares of common stock so converted into 200,000 shares of Class A stock were relisted, as of the date of the reorganization, on the Cincinnati Stock Exchange. In connection with the 1934 reorganization the issuance of an additional 100,000 shares of Class B stock was duly authorized. The entire issue of 100,000 shares of Class B stock was, as of July 1, 1934, issued to International Business Machines Corporation, of New York, in exchange for certain of the assets of the so-called Dayton Scale Division of the International Business Machines Corporation. The 100,000 shares of Class B stock are, and since their authorization in 1934 have been continuously held by the International Business Machines Corporation and are not listed on any stock exchange. On January 21, 1938, the date of decedent's death, the 200,000 shares of Class A stock were owned by some 1,300 to 1,400 shareholders residing in some 25 States of the United States and in foreign countries. The following tabulation shows the number of Class A shares sold through the Cincinnati Stock Exchange per year, and the average market price per share, from 1927 to 1942, inclusive: *245 Number
Average
of shares
market price
Year
sold
per year
1927
31,388
$33.52
1928
22,524
59.63
1929
14,451
59.34
1930
8,275
42.83
1931
7,508
34.61
1932
2,745
12.90
1933
4,390
16.50
1934
5,941
24.18
1935
7,662
33.78
1936
5,987
45.30
1937
5,936
42.90
1938
1,767
32.50
1939
2,465
39.45
1940
1,712
37.31
1941
2,441
36.21
1942
1,356
27.54
The following tabulation shows the number of days per year on which sales of the Class A stock were made through the Cincinnati Stock Exchange from 1935 to 1939, inclusive: 1935
143 days
1936
140 days
1937
120 days
1938
64 days
1939
77 days
The prices of Class A common stock of The Hobart Manufacturing Company on the Cincinnati Stock Exchange for 1937 varied from a high of 49 3/4 in February to a low of 32 1/2 in December, and in 1938 from a low of 30 in March, April, May and June to a high of 38 in December. The following tabulation shows the dividends paid per year on the 200,000 common shares, from 1927 to June 30, 1934, inclusive; also the dividends paid on the 200,000 Class A shares and 100,000 Class B shares from July 1, 1934 to 1942, inclusive: Dividends per
share on com-
Year
mon stock
1927
$2.00
1928
2.00
1929
2.50
1930
2.50
1931
2.50
1932
1.45
1933
1.00
First half 1934
1.00
Dividends
Dividends
per share on
per share on
Class A stock
Class B stock
Second half 1934
$ .50
$ .25
1935
1.75
1.25
1936
2.00
1.50
1937
2.00
1.50
1938
2.00
1.50
1939
2.00
1.50
1940
2.25
1.75
1941
2.25
1.75
1942
2.25
1.75
*246 Previous to August 1936 decedent was in excellent physical condition, played a good game of golf, usually with men 10 to 15 years younger than himself, and had never been seriously ill nor confined to his bed for more than a few days at a time. He was susceptible to ordinary colds and in the early spring of 1936 suffered an "ordinary upper respiratory infection." In 1936 he also consulted a physician concerning a catarrhal inflammation of the middle ear. His physician found his condition otherwise to be "of the best." In August 1936 decedent, with his wife and some friends, went on a vacation fishing trip to Lake-of-the-Woods, Canada. While on this trip decedent first showed symptoms of a thickness of speech and on his return to Ohio, on August 27, consulted a specialist in Cincinnati. The specialist recognized the condition as the beginning of an incurable disease known as Bulbar palsy. The first effect of the disease is a paralysis of the soft palate. The paralysis spreads slowly to other muscles and nerves, finally reaching the diaphragm and ultimately causing death. The specialist did not reveal to decedent the name, nature, or seriousness of the disease. On August 10 when *247 decedent had consulted the same physician concerning a sore throat he had no symptoms of Bulbar palsy. The condition became progressively worse and decedent visted the Mayo Clinic in Rochester, Minnesota, where he was informed that he was suffering from Bulbar palsy. He was also told that the disease was fatal and that he had but six months to live. Decedent died January 21, 1938, at the age of 69 years, of complications resulting from Bulbar palsy. The respondent added $54,842.07 to the value of decedent's taxable estate because of the transfer on January 15, 1935 of certain securities to the irrevocable trust dated December 15, 1928. He increased to $50 per share the fair market value of 7,564 shares of Class A common stock of The Hobart Manufacturing Company, the same having been transferred to the revocable trust of December 29, 1928 and having been returned as part of the taxable estate at a value of $31 per share. He further increased the taxable estate by including as a part thereof 9,050 shares of The Hobart Manufacturing Company Class A common stock transferred to the irrevocable trust dated December 27, 1935. As to these shares he used a fair market value of $50 per share. *248 The aggregate of these three items, with a small item of cash in the amount of $60.65, resulted in a total increase in the taxable estate in the amount of $659,047.41. The determination of the tax liability was stated to be under sections 302 (a), 302 (c) and 302 (d) of the Revenue Act of 1926, as amended. The transfers of stock here in question were not made in contemplation of death, or to take effect in possession or enjoyment at or after death. The fair market value of the Class A common stock of The Hobart Manufacturing Company on January 21, 1938 was $36 per share. Opinion VAN FOSSAN, Judge: Two questions are presented: The first, the motive underlying the transfers of certain property to two trusts; second, the fair market value of certain stock. We have made an ultimate finding of fact that the transfers in question were not made in contemplation of death or to take effect in possession or enjoyment at or after death. But little need be added. There is no evidence, not even the coincidence of the transfers with old age or physical infirmity, to support a claim that the transfers were made in contemplation of death. All of the evidence tends to the contrary. Decedent was *249 not an old man when he made the transfers nor had he any reason to anticipate early death. At the time of the transfer in 1935 he was enjoying excellent health. There is no evidence that he had any promptings of the serious disease which struck him in August 1936. It was of sudden onset. Previous thereto all conditions, physical and mental, were consistent only with the thought of further life. There is no evidence that thoughts associated with death prompted the transfers. We sustain the petitioner on this point. As to the correlative provision, i.e., a transfer intended to take effect in possession or enjoyment at or after death, we likewise find for the petitioner. The trusts were irrevocable and absolute. They were immediately effective. The decedent had no share in the income or right of reversion in the corpus. The only rights retained by him were, under certain conditions, to assist the trustee in supervising investments and administration and to add to the corpus of the trusts. He retained no money or property rights. We find no basis in the provisions of the trust agreements or elsewhere in the record for approving respondent's determination on such ground. By similar reasoning *250 we dispose of respondent's second alternative contention that the property was "subject, at the date of decedent's death, to a change through the exercise of a power to alter, amend or revoke within the meaning of section 302 (d) of the Revenue Act of 1926, as amended." The trust reserved to the settlor no such powers. We find no merit in this contention. The only remaining problem is the determination of the fair market value of the Class A common stock of The Hobart Manufacturing Company. Petitioners returned the stock at the price quoted on the Cincinnati Stock Exchange at about the basic date, at which time sales were few and the stock was at approximately its lowest price during a period of several years. The ascertainment of the fair market value of stock is a process of applying judgment to the facts available. No single test is always determinative. There are many helpful indices, e. g., market quotations over a sufficiently long period, the dividend record, management capacity, asset condition, and business trends. Opinions of qualified witnesses are sometimes, but not always, helpful. We have found as a concluding fact that the fair market value of the Class A common *251 stock of The Hobart Manufacturing Company was $36 per share on January 21, 1938. This figure represents our best judgment after full consideration of all the evidence and will be employed in making the computation consequent on this opinion. Decision will be entered under Rule 50.